## BAYSIDE BUS CORPORATION v. UNITED STATES.

### No. 67.

Circuit Court of Appeals, Second Circuit.

Nov. 9, 1942.

Writ of Certiorari Denied Feb. 8, 1943.

Max E. Greenberg, of New York City (Emanuel Harris, of New York City, of counsel), for plaintiff-appellant.

Mathias F. Correa, U. S. Atty., of New York City (John B. Creegan, Asst. U. S. Atty., of New York City, of counsel), for defendant-appellee.

Before L. HAND, AUGUSTUS N. HAND and CLARK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The complaint sets forth three causes of action alleging a breach by the defendant of three contracts designated as "purchase orders" calling for the transportation of WPA workers by the plaintiff from the Ferry Terminal at Staten Island to various job sites during the respective months of January, February and March, 1939. A per capita charge for transportation was stipulated in the contracts varying for different zones. Each contract contained a provision that: "Payment will be made only for the exact number of passengers transported in accordance with all the terms of the contract at the price quoted herein."

Each contract also contained the following provision:

"The aforesaid number of workers is approximate only, and cannot be guaranteed. However, successful vendor will be notified by 12:00 noon of the number of passengers to be carried the following day, subject to a variance of 10% more or less, although vendor's acceptance of notice by noon of the previous working day of a greater modification than 10% will be held binding.

"Vendor will supply sufficient buses to conform to schedules hereinbefore mentioned, and will also have available a reserve of 10% to meet contingencies."

Recovery is sought by the plaintiff for a deficiency greater than the 10% between the number of workmen designated in the notices and the number actually transported. Although the contract provided that the number of passengers to be transported "cannot be guaranteed," nevertheless the provision for notification in advance of the number to be carried "subject to a variance of 10% more or less" can have no meaning unless the notices were intended to protect the Bus Company from providing an excessive number of busses. Accordingly we think that there was a breach of contract whenever the Works Progress Administrator failed to give accurate notices within the specified limits.

It was proved that the workmen offered for transportation did not equal 90% of the number embraced in the notices given for the purchase orders. Therefore the plaintiff is entitled to recover any losses it suffered from having to provide extra busses to carry less than that number. The difficulty, however, in allowing recovery upon the record before us is that the number of passengers carried seems to have more than filled the plaintiff's own busses. While there was a substantial shortage as compared with 90% of the number of passengers designated in the notices, it would seem that any loss must have fallen upon the subcontractors from whom the plaintiff engaged busses sufficient to deal with the number in excess of what plaintiff's own busses could carry.

It appears from Exhibit 3 that plaintiff usually furnished only four busses of its own, and between March 1 and March 15 it furnished only three. There were apparently always enough passengers offered to fill plaintiff's own busses, though perhaps in certain instances it chose to allow its subcontractors to carry a few passengers who might have been placed in its own vehicles. At least there seems to have been no proof, or even claim, that it lost anything by the incorrect notices except as it was under some obligation to its subcontractors occasioned by the shortage. It is, therefore, necessary to determine what was its obligation to the subcontractors.

Paul J. Pierce, the president of the plaintiff, testified as to the contract with the subcontractors: "I agreed to give them $18 a day and anything over $18 a day I was to retain for myself and out of that $18 certain deductions were to be made" (Rec. 41). After itemizing the nature of these deductions, the details of which are immaterial for the purposes of discussing the final obligation to the subcontractors, Pierce was asked: "What happened after you started operating?" He replied that the quotas ordered by the government (that is those covered by the notices) were much

less than the actual number of employees furnished for transportation; that he could not pay the subcontractors $18 a day for their coaches; that he did pay them at the government contract rate for the passengers actually carried, less the deductions mentioned; and that he promised, if he recovered "any additional money in lieu of the variance being greater than what the contract provided for," he "would do the right thing and compensate them for that difference to their satisfaction" (Rec. 44).

There is no proof either that the plaintiff bound itself to order busses in the future or that the subcontractors bound themselves to supply them. Under the first arrangement made between the parties the plaintiff owed the subcontractors $18 a day for each bus furnished during the period prior to entering into the later arrangement which limited payments to the number of passengers carried. The later arrangement, like the first one, seems to have consisted of a series of offers made by the plaintiff and accepted from time to time by the subcontractors, but upon the understanding that the former would pay the latter at the government contract rate for the passengers actually transported and that the subcontractors would on their part accept this payment in discharge of anything due by reason of the $18-a-day obligations incurred under the original arrangement. In addition it was provided that if the plaintiff succeeded in recovering any loss under its contract with the government, the subcontractors would be recompensed in some fair manner.

It is evident from the foregoing that while, because of the inaccurate notices, there were breaches of the three contracts known as "purchase orders," the plaintiff could lose only such expense as it incurred because of furnishing too many busses. However, any unnecessary busses provided were not furnished at its expense but at that of the subcontractors, who were paid at the government contract rate for all passengers carried. They accepted this payment in full discharge of all obligations of the plaintiff to them, other than its promise to seek redress of the government. But, as we have seen, the value of this promise depended upon the continued existence of a duty on the part of the plaintiff to compensate the subcontractors for providing unnecessary busses—a duty negatived by the final agreement with the subcontractors. Accordingly, no damages were proved and the complaint was properly dismissed.

Judgment affirmed.

**CLARK, Circuit Judge (concurring).**

I concur that plaintiff proved no damages; but I believe further that no contract to supply a certain number of workmen to be carried was shown. The provisions that payment was to be made "only for the exact number of passengers transported" and that the number of workers "cannot be guaranteed" are too explicit to be overridden by the unprecise reference to a variance of 10% "more or less." It should be borne in mind that this is but part of a provision stating how the number of busses to be provided each day by the plaintiff were to be ascertained. That is, it fixes the plaintiff's responsibility; it does not in terms, and hence should not by implication, impose a duty upon the defendant contrary to provisions explicitly stating the contrary.